UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENT JACOBY,

                              Plaintiff,


                                                    **Hon. Hugh B. Scott**

                              v.                    10CV920

                                                    (CONSENT)

JAMES CONWAY, et al.,                               **Order**

                              Defendants.

_____

Before the Court is defendants' motion for summary judgment (Docket No. 35[1]).

Responses to this motion were due by March 15, 2013, with any reply due by March 29, 2013,

and this motion was deemed submitted (without oral argument) on March 29, 2013 (Docket

No. 47). On December 14, 2011, the parties consented to proceed before the undersigned

(Docket No. 7).

Plaintiff is proceeding here pro se and is currently detained in a county jail in Alabama

(see Docket No. 36, Defs. Statement ¶ 1). The remaining defendants are the Attica Correctional

Facility Superintendent James Conway; Deputy Superintendent Paul Chappius; New York State

Department of Corrections and Community Supervision ("DOCCS") sergeants Robert Dunbar

and Sean Warner; corrections officers Gary Pritchard, Scott Bosworth, Keith Swack, and

_____

[1]In support of their motion, defendants submitted their individual Declarations, Docket
Nos.38-45; their Statement of Facts, Docket No. 36; their Memorandum of Law, Docket No. 37;
the Declaration of Dr. Jadow Row, Docket No. 48; exhibit of plaintiff's medical records, filed
under seal, Docket No. 49, Rao Ex. A; their attorney's Reply Declaration, Docket No. 52.
    In opposition, plaintiff submits his Memorandum of Law with six pages from plaintiff's
medical records as exhibits, Docket No. 50.

Matthew Rademacher (see generally Docket Nos. 4, 5 (Answers to Complaint); 20, 22, 24 (Answers to Amended Complaint); 40, 39, 41, 45, 42, 38, 44, 43 (Declarations of defendants); 36, Defs. Statement ¶¶ 2-9). Plaintiff moved for leave to file an Amended Complaint (Docket No. 14), which was granted (Docket No. 15), and plaintiff filed his Amended Complaint (Docket No. 16).

Plaintiff moved to proceed in forma pauperis (Docket No. 2), which was granted but ordering the dismissal of claims against some defendants, including John Does (Docket No. 3). After being detained in Alabama, plaintiff moved for appointment of counsel (Docket No. 26), which was denied without prejudice (Docket No. 28).

BACKGROUND

Plaintiff sued defendants for violation of his civil rights, pursuant to 42 U.S.C. § 1983, while he was incarcerated at the Attica Correctional Facility ("Attica") (Docket No. 16, Am. Compl.). On July 7, 2010, an Hispanic inmate got into an argument with a corrections officer and had his cell searched (id. ¶¶ 1-2). Before officers got to that cell, plaintiff yelled out man down to let inmates know that the officers were on the cell block floor (id. ¶ 3). Plaintiff alleges that the Hispanic inmate then was beaten by officers (id. ¶ 4). Later that evening, plaintiff went downstairs to go outside for recreation, but never made it to recreation because he was detained by officers. One of the officers called plaintiff a "spic and nigger lover" and punched plaintiff in his face. (Id. ¶¶ 5-6.) He claims that he was punched by defendant Pritchard and choked by defendant Swack as Swack lifted plaintiff off the ground by plaintiff's neck (id. ¶ 6). Plaintiff alleges that defendant Rademacher also punched him while plaintiff was in the air (id.). Plaintiff ran away and then passed out from anxiety attack or seizure (id.). Plaintiff accuses Sergeant

2

Warner of observing this incident and doing nothing to stop it (id.). Plaintiff complains that he had mental health diagnoses and had seizures prior to this incident (id. ¶ 7). Plaintiff was helped back to his cell and the next morning went to sick call (id. ¶ 8), claiming that he had black and blue marks around his eyes, welts on his neck, and a cut under his eye like a strawberry (id. ¶ 9). He claims that he has a permanent bruise on the side of his right eye, suffered dizzy spells, and blurry vision requiring him to wear glasses (id. ¶ 10). Plaintiff, who had given his identification card at the start of this incident, did not get the card back and was denied access to the commissary on July 15, 2010 (id. ¶ 11); he had a new one issued to him on July 21, 2010 (id.).

On July 15, 2010, plaintiff alleges that an unknown officer, perhaps Swack, punched him and called him a "white nigger" and that if plaintiff "wanted to hang with spics and niggers he would treat him like one" (id. ¶ 13). On July 20, 2010, plaintiff left his cell but was put up against the wall by officers while Sergeant Dunbar watched (id. ¶ 14). These officers then grabbed plaintiff by his legs, pulled off his boots and squeezed his feet and toes "really hard" and twisted his legs "in dangerous angles to inflict pain," apparently because the officers were upset for plaintiff helping the unnamed Hispanic inmate (id.). Plaintiff was told to put his boots back on and, as he was trying to go upstairs, defendant Bosworth ran through the door and slammed plaintiff into the wall by his shoulder, yelling insults and obscenities (id. ¶ 15). He contends that he was losing weight and constantly hungry during this period and was tired of the abuse (id. ¶ 16). At this point plaintiff wrote to Superintendent Conway and Deputy Superintendent Chappius about these incidents (id.). Plaintiff was taken to "medical" by Sergeant Dunbar but plaintiff did not report any injuries there since Dunbar was also in the room (id. ¶ 17).

On July 24, 2010, plaintiff was returned to C-Block, where he claims that officers would not allow him to eat when he was housed there (id. ¶ 19). On July 26, while in C-Block and returning from chow, plaintiff alleges that he was assaulted by another inmate but plaintiff would not identify the assailant to Sergeant Dunbar (id. ¶ 21); plaintiff does not claim that Dunbar failed to protect plaintiff from that inmate. Plaintiff was to be moved to A-Block and protective custody but plaintiff refused transfer there, instead he was placed in involuntary protective custody in B-Block (id. ¶¶ 23-25).

*Defense Motion for Summary Judgment*

According to defendants' Statement (Docket No. 36), plaintiff was an inmate in Attica from July 7 to 27, 2010 (id. ¶ 1). Plaintiff alleges violations of his constitutional rights in the excessive use of force on July 7, 2010, by Pritchard, Swack, and Rademacher, while Sergeant Warner watched and excessive use of force and verbal harassment on July 20, 2010, by Bosworth, while Sergeant Dunbar watched (id. ¶ 10). As for the July 7 incident, Warner wrote a memorandum (Docket No. 45, Warner Decl. ¶ 4, Ex. A; Docket No. 36, Defs. Statement ¶ 11), stating that while onsite supervisor for C-Block, Warner supervised his officers in conducting spot pat down frisks of inmates which may have included plaintiff (Docket No. 45, Warner Decl., Ex. A; Docket No. 36, Defs. Statement ¶ 12). Warner states that these frisks occurred without incident and without any inmate assaults (Docket No. 45, Warner Decl. ¶¶ 3, 5, Ex. A; Docket No. 36, Defs. Statement ¶ 12). Warner states that he did not recall the incidents alleged by plaintiff and denies assaulting him or witnessing corrections officers assaulting plaintiff (Docket No. 45, Warner Decl. ¶ 3). Pritchard, Rademacher, and Swack each wrote memoranda on this incident (Docket No. 36, Defs. Statement ¶¶ 13-15; Docket No. 42, Pritchard Decl. ¶ 5, Ex. A;

Docket No. 43, Rademacher Decl. ¶ 5, Ex. A; Docket No. 44, Swack Decl. ¶ 5, Ex. A). Each officer denies assaulting plaintiff (Docket No. 42, Pritchard Decl. ¶¶ 3, 5; Docket No. 43, Rademacher Decl. ¶¶ 3, 5; Docket No. 44, Swack Decl. ¶¶ 3, 5). Pritchard denies knowing plaintiff (Docket No. 42, Pritchard Decl., Ex. A) and, had he used force against plaintiff a use of force report would have been made and no such report was written (id. ¶ 6).

As for the July 20 incident, Sergeant Dunbar and Boswell also wrote memoranda (Docket No. 36, Defs. Statement ¶¶ 17-20; Docket No. 41, Dunbar Decl., Ex. A; Docket No. 38, Boswell Decl., Ex. A), also declaring that the pat frisk done that day were performed in a professional manner and that no assaults occurred.

Plaintiff filed a grievance concerning these two incidents but the grievance was investigated and denied as unfounded (Docket No. 36, Defs. Statement ¶¶ 21-22; see, e.g., Docket No. 40, Conway Decl. ¶ 3). Plaintiff, in filing this grievance and other communications, only carbon copied defendant Chappius and never directly addressed any correspondence to Chappius (Docket No. 36, Defs. Statement ¶¶ 35-36, 37). After plaintiff wrote additional letters to the Superintendent's office, a further investigation was conducted and no credible evidence was produced to support plaintiff's claims (id. ¶¶ 23-24, 39). Defendants conclude that there are no documents to support his claims (id. ¶ 25). Superintendent Conway's sole involvement in these incidents was to commence an investigation of plaintiff's complaints (id. ¶¶ 38, 40).

Plaintiff went to the Attica health facility the next day from the July 7 incident (id. ¶ 26; Docket No. 48, Rao Decl.). On July 8, 2010, plaintiff told medical staff that he fell on July 7 after feeling warm and sweaty and fell on the stairs (Docket No. 36, Defs. Statement ¶ 27; Docket No. 48, Rao Decl. ¶ 5; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health

Record, July 8, 2010; <u>see also</u> Docket No. 50, Pl. Memo. Ex. A). The only injuries noted on July 8 were a small bruise and an abrasion on plaintiff's right cheek; there was no swelling on the back of his head detected and plaintiff denied nausea or vision problems (Docket No. 36, Defs. Statement ¶ 28; Docket No. 48, Rao Decl. ¶ 5; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health Record, July 8, 2010; <u>see also</u> Docket No. 50, Pl. Memo. Ex. A). Plaintiff was prescribed over-the-counter pain medication and a cold compress (Docket No. 36, Defs. Statement ¶ 29; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health Record, July 8, 2010; <u>see also</u> Docket No. 50, Pl. Memo. Ex. A). Plaintiff sought medical attention on July 21, 2010, a day after the July 20 incident, but at the direction of Attica supervisors rather than at his own request (<u>id.</u> ¶ 30). Plaintiff was evaluated on July 21 and was found not to have any injuries (Docket No. 36, Defs. Statement ¶ 31) or on July 22 (<u>id.</u> ¶ 32; <u>see also</u> Docket No. 50, Pl. Memo. Ex. A (pl. medical record, Ambulatory Health Record, July 21, 2010)). Plaintiff sought treatment from an inmate cutting him on July 27 (Docket No. 36, Defs. Statement ¶ 33). Plaintiff did not seek further treatment for his alleged injuries (<u>id.</u> ¶ 34).

Defendants argue that plaintiff fails to allege an Eighth Amendment cruel and unusual punishment claim (Docket No. 37, Defs. Memo. at 4-8). Plaintiff's medical records do not show any significant injury from either the July 7 or July 20 incidents for the objective element of an excessive force claim (<u>id.</u> at 7-8). Plaintiff next alleges that he was retaliated against for assisting the Hispanic inmate. Defendants argue that this retaliation claim needs to be examined "with skepticism and particular care" (<u>id.</u> at 8-9), <u>see</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995). Defendants reject plaintiff's retaliation claim since his speech (advising the Hispanic inmate of the coming officers) was not protected speech (<u>id.</u> at 9-10), <u>see</u> <u>Duamutef v. O'Keefe</u>,

98 F.3d 22, 24-25 (2d Cir. 1996) (no constitutional right to circulate petitions). Defendants next

deny that Bosworth's alleged verbal harassment rose to the level of an Eighth Amendment

violation and fails to state a claim under the First Amendment as being (at worst) mere threats of

harm without actual harm (id. at 10-11). Next, they argue that plaintiff fails to state an Equal

Protection Clause cause of action (id. at 11-12). Defendants conclude that plaintiff fails to show

the personal involvement of defendants Conway or Chappius to make them liable for civil rights

violations (id. at 12-16). Finally, defendants claim entitlement to qualified immunity (id. at 16-

18).

      Plaintiff responds that the incidents occurred as he alleged (Docket No. 50). In particular,

plaintiff argues that he warned an Hispanic inmate that racist white officers were coming to beat

him, leading to plaintiff being beaten for it (id. at 5-6). He claims that he was denied food and

recreation on July 15, 2010, in retaliation, and was assaulted again on July 20 because of this

incident (id. at 7; Docket No. 16, Am. Compl. ¶ 13). He claims that Pritchard, Rademacher, and

Swack had caused injuries to plaintiff on July 7 that were sufficiently serious to state an

excessive force claim, while Bosworth also created sufficiently serious injuries on July 20

(Docket No. 50, Pl. Memo. at 10-11), arguing that the injuries he suffered were more than de

minimis. He claims that he suffered a swollen eye and abrasions, later requiring glasses and had

blurry vision (id. at 11, 13, Ex. A; see also Docket No. 49, Ex. A (under seal) July 8, 2010,

Ambulatory Health Record, see Griffin v. Crippen, 193 F.3d 89, 91-92 (2d Cir. 1999) (reversing

finding plaintiff's bruised shin and swelling over knee was de minimis); Smith v. Coughlin, 917

F. Supp. 168, 171-73 (W.D.N.Y. 1995) (Heckman, Mag. J.) (Report & Recommendation)

(abrasions under left eye, small laceration near right eye, skin tears on calf, slight swollen wrist

from attack by corrections officer is sufficient injury), <u>adopted</u> <u>sub nom.</u> <u>Smith v. Marcellus</u>, 917

F. Supp. 168 (W.D.N.Y. 1995) (Skretny, J.). Plaintiff claimed that he was punched in the

stomach on July 15, 2010, merely because of the prior incident (Docket No. 50, Pl. Memo. at 11;

<u>see</u> Docket No. 16, Am. Compl. ¶ 13). Plaintiff contends that there is a material issue of fact

(whether he was assaulted) which should preclude summary judgment (Docket No. 50, Pl.

Memo. at 12). Plaintiff does not know any precedent against his recovery for his psychological

pain from these incidents (<u>id.</u> at 13).

Plaintiff claims that he stated a valid retaliatory treatment, that he had a First Amendment

right to warn the other inmates (<u>id.</u> at 17-18). He concludes that he asserted valid harassment (<u>id.</u>

at 18) and Equal Protection claims (<u>id.</u> at 18-19). As for defendants' qualified immunity claim,

plaintiff argues that it is well-settled that corrections officers may not starve inmates, deny them

recreation, or beat them for the inmate warning other inmates (<u>id.</u> at 20), but not citing any

authority for this proposition.

Defendants reply that plaintiff's response was conclusory and contains contradictions

(Docket No. 52, Defs. Atty. Reply Decl. ¶ 4), not supported by evidence aside from plaintiff's

statements (<u>id.</u> ¶¶ 5-8). Defendants claim that plaintiff only presents conclusory statements (for

example) that defendant Sergeants Warner and Dunbar were liable merely because the officers

looked for plaintiff earlier (<u>id.</u> ¶ 9), and plaintiff failed to show that Conway and Chappius were

aware of plaintiff's transfer to and from cell block C (<u>id.</u> ¶ 10).

DISCUSSION

I.       Applicable Standards

       A.       Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion

9

where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

Here, plaintiff is proceeding pro se and as such his pleadings are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

> "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' Bell Atlantic Corp. v. Twombly, [550 U.S. 544, 555], 127 S. Ct. 1955, 1964, (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at [555], 127 S. Ct. 1955, 1964, (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))."

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  In Erickson, the Court held that the

Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a pro se

inmate's claims.

> "The Court of Appeals' departure from the liberal pleading standards set forth by
> Rule 8(a)(2) is even more pronounced in this particular case because petitioner
> has been proceeding, from the litigation's outset, without counsel.  A document
> filed pro se is 'to be liberally construed,' [Estelle v. Gamble, 429 U.S., 97, 106
> (1976)], and 'a pro se complaint, however inartfully pleaded, must be held to less
> stringent standards than formal pleadings drafted by lawyers,' ibid. (internal
> quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be
> so construed as to do substantial justice").

551 U.S. at 94; see Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008).  Thus, the pro se

plaintiff's complaint has to be construed "more liberally" than one filed by counsel, Boykin,

supra, 521 F.3d at 214.

> B.      Civil Rights Liability and Municipal Parties

Under 42 U.S.C. § 1983, defendants are liable either for their personal involvement in the

alleged violation of plaintiff's civil rights or in establishing a policy or custom, implemented by

others, that leads to the violation.  To state a § 1983 claim, plaintiff must allege the manner in

which defendant was personally involved in depriving plaintiff of his rights, see Colon v.

Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994);

Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989).  "Personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under

§ 1983," Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); see Wright, supra,

21 F.3d at 501; Colon, supra, 58 F.3d at 873; Provost v. City of Newburgh, 262 F.3d 146, 154

(2d Cir. 2001).  There are several ways to allege personal involvement:  plaintiff could claim that

defendant had direct participation in the event; plaintiff could claim that defendant failed to remedy the violation after it was noticed; defendant created the policy which lead to the violation or allowed the policy to continue; defendant was grossly negligent in managing subordinates which caused the violation to occur; or defendant exhibited gross negligence or deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were taking place, Wright, supra, 21 F.3d at 501.

 C. Cruel and Unusual Punishment

 Generally, to state a claim under 42 U.S.C. § 1983, the plaintiff needs to show that he or she was denied a constitutional right and that deprivation occurred under the color of state law, e.g., Chambliss v. Rosini, 808 F. Supp. 2d 658, 666 (S.D.N.Y. 2011) (Gorenstein, Mag. J.). For an excessive force claim under the Eighth Amendment (applicable to prison inmates, Hudson v. McMillan, 503 U.S. 1, 6-7 (1992)), a plaintiff has to establish both a subjective element and an objective element, under Hudson, supra, 503 U.S. at 7-8. Under this subjective test, the "core judicial inquiry is set out in [Whitley v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm," id. at 7, and the objective test requires the plaintiff to show that defendants "'had a wanton state of mind when engaging in the alleged misconduct'" with the inquiry as to wantonness turning on "'whether the alleged conduct involved unnecessary and wanton infliction of pain," Jones v. Goord, No. 05CV182, 2008 WL 904895, at *3 (W.D.N.Y. Jan. 23, 2008) (McCarthy, Mag. J.) (Report & Recommendation, citations omitted), adopted, 2008 WL 904895, at *1 (Arcara, Ch.J.) (W.D.N.Y. Mar. 31, 2008) (Docket No. 34, Defs. Memo. at 4).

In Hudson, the plaintiff was punched in the mouth, eyes, chest, and stomach without justification, 503 U.S. at 4; see Wilkins v. Gaddy, 559 U.S. 34, __, 130 S.Ct. 1175, 1178 (2010) (per curiam).  The Supreme Court distinguished different Eighth Amendment claims, the conditions of confinement or deliberate indifference to medical needs claims from excessive force claims, Hudson, supra, 503 U.S. at 8-9.  With the former, a plaintiff would have to show serious injury to satisfy the objective component of each claim, id. at 9.  With excessive force claims, the Hudson Court notes that "society's expectations are different.  When prison officials maliciously and sadistically use of force to cause harm, contemporary standards of decency always are violated," id.  "This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury,"  Id.  The Court then said "that is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  See Johnson v. Glick, 481 F.2d [1028,] 1033 [(2d Cir.)] ('Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights'), [cert. denied sub nom. John v. Johnson, 414 U.S. 1033 (1973)]," Hudson, supra, 503 U.S. at 9, concluding that the Eighth Amendment's prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort ' "repugnant to the conscience of mankind." ' Whitley [v. Albers], 475 U.S. [312,] 327 [(1986)] (quoting Estelle, supra, 429 U.S. at 106) (internal quotation marks omitted)," Hudson, supra, 503 U.S. at 9-10.  A de minimis use of force "will rarely suffice to state a constitutional claim," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993), and "not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights," id. (quoting Johnson v. Glick, supra, 481 F.2d at 1033); Griffin, supra, 193 F.3d at 91.

The Supreme Court in Hudson reversed the Circuit Court and held that plaintiff's injuries--bruises, swelling, loosened teeth, cracked dental plate--were **not** de minimis for Eighth Amendment purposes, Hudson, supra, 503 U.S. at 10. Justice Blackmun concurred in the judgment and applauded the majority in rejecting a significant injury requirement for excessive force Eighth Amendment claims, because it applies the Constitution to various kinds of state-sponsored torture that ingeniously evades a serious injury threshold, id. at 13 (Blackmun, J., concurring in judgment).

In Wilkins, supra, 559 U.S. at __, 130 S.Ct. at 1176, the Court emphasized that the excessive force analysis is "based on the nature of force rather than the extent of the injury." The plaintiff there was punched, kicked, kneed, choked, and body slammed that he alleged was maliciously and sadistically done without provocation, id. at 1179. In commenting on Hudson, the Wilkins Court noted that "the extent of injury may also provide some indication of the amount of force applied," 130 S.Ct. at 1178. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury," id., at 1178-79. The Court rejected using injury as a proxy for force, id. at 1179.

D.    Failure to Protect

"'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).  An officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 where the officer fails to intervene to prevent the harm, in spite of a 'realistic opportunity' to do so, O'Neill, 839 F.2d at 11-12, and 'observes or has reason to know . . . that excessive force is being used.' Anderson, 17 F.3d at 557.  'Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.' Id.," Allen v. City of N.Y., 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007).

E.    First Amendment Retaliation

To establish a First Amendment retaliation claim, plaintiff needs to demonstrate "(1) that his speech or conduct was constitutionally protected, (2) that the defendant took adverse actions against him, and (3) that there was a causal connection between the protected speech and the adverse action," Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swiekiewicz v. Sorema N.A., 534 U.S. 506 (2002)) (Docket No. 37, Defs. Memo. at 9).

F.    Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the

injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As was required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id. But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation had occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.     Application

    A.     Summary Judgment

Plaintiff did not file a counterstatement of facts or evidence in an admissible form. Instead, he submits his Memorandum which recites his version of the facts. But the purpose for this Court's Local Civil Rule 56 is to have the statement of the material facts not in dispute and a statement of those facts disputed by the movant to not only show the conflict, but also to indicate the admissible evidence to support the contention about those facts. Here, plaintiff only recites in

his Memorandum those facts without showing any admissible evidence (affidavits, documents, or other proof) to support his contention that the facts are as he claims them to be or are disputed. Therefore, this Court **deems the facts in defendants' Statement (Docket No. 36) to be admitted**.

B.      Incidents

The incidents alleged can be considered separately.  The question here for each incident is whether the purported use of force raises a constitutional claim under the Eighth Amendment, in particular whether plaintiff established the objective element for an Eighth Amendment excessive force cruel and unusual punishment claim.  This is further reduced to whether force was applied to plaintiff and whether sufficient injury occurred to violate the Eighth Amendment.

1.      July 7, 2010, Incident

Plaintiff claims that he was bruised, suffered dizzy spells, and blurred vision from being punched in the face and stomach, being choked, and being lifted off the ground by his neck on July 7, 2010 (Docket No. 16, Am. Compl. ¶ 6).  The defendants who plaintiff named deny that this incident occurred and any frisk of plaintiff occurred without incident.

Defendants argue that plaintiff failed to supply proof that he was assaulted or to contradict defendants' contentions that he was not assaulted (Docket No. 37, Defs. Memo. at 6-8).  There was no use of force report generated from this incident (see Docket No. 42, Pritchard Decl. ¶ 6).  Defendants emphasize the absence of injury to plaintiff, rather than the force applied, arguing instead that there is no proof of any force used at all.

From the uncontested facts from defendants, on July 7, 2010, Sergeant Warner conducted a frisk of plaintiff without incident.  Plaintiff reported to medical staff that he fell because he

became overheated and hit the back of his head (e.g., Docket No. 50, Pl. Memo., Ex. A). Had plaintiff filed a counterstatement of facts and other evidence aside from his conclusory allegations, he may have raised an issue of fact on whether there was a use of force or whether the force applied was excessive. But plaintiff did not do so and, under this Court's Local Civil Rule 56(a)(2), defendants' uncontested statement of material facts are deemed admitted and therefore plaintiff fails to establish that force was used. Looking at plaintiff's medical records after that incident merely indicates that he had abrasions on his cheek and, although he claimed to have hit his head (due to a different cause), there was no indication of head injury during that examination (Docket No. 50, Pl. Memo. Ex. A; Docket No. 49, Ex. A, Ambulatory Health Record, July 8, 2010). As for his vision complaints, on July 8 plaintiff did not note any vision problems (id.) and at his subsequent vision examination, on September 22, 2010, he was prescribed reading glasses (Docket No. 50, Pl. Memo. Ex. A, Attica Correctional Facility Eye Record, Sept. 22, 2010). The only evidence of injuries beyond this are from plaintiff's statements. Again, plaintiff's failures to oppose formally defendants' statement of facts and failure to introduce contrary evidence in admissible form (or even argue his inability to present such evidence, cf. Fed. R. Civ. P. 56(d)) require this Court to accept defendants' uncontested statement of facts and the injuries from July 7, 2010, are limited to those noted in plaintiff's medical records.

          2.       July 15, 2010, Starvation

Plaintiff complains that he lost weight and was hungry on July 15, 2010 (Docket No. 16, Am. Compl. ¶ 16), and later that he was moved back to cell block C where he claims he was not allowed to take meals (id. ¶¶ 19-20). Plaintiff alleges that his identification card was taken

following the July 7 incident and he was denied access to the commissary on July 15 because he lacked the card (id. ¶¶ 11, 5), claiming that an unnamed officer took his identification card. None of the defendants claim that the took plaintiff's identification or held it beyond July 7.

Despite these allegations, plaintiff fails to show how defendants failed to feed him for that day or whether that starvation was connected with plaintiff's interaction with the Hispanic inmate. The only connection was the seized identification card, with a new one restored to him by July 21, 2010. Plaintiff fails to state which defendant kept his identification card.

Plaintiff's starvation claim is a conditions of confinement claim under the Eighth Amendment and, unlike the excessive force claims, plaintiff needs to show for the objective element that he suffered extreme deprivations, those beyond routine discomfort inherent with imprisonment, Hudson, supra, 503 U.S. at 9; see Rodriguez v. McGinnis, No. 98CV6031, 2004 U.S. Dist. LEXIS 13585, at *49-51 (W.D.N.Y. May 18, 2004) (Siragusa, J.). Plaintiff, at worse, alleges starvation only on one day by the act of an unnamed corrections officer, without offering admissible evidence of that starvation. He has not stated a constitutional deprivation.

3.      July 20, 2010, Incident

Plaintiff next complains that, during a frisk on July 20, 2010, that his legs were twisted causing pain (Docket No. 16, Am. Compl. at 5). From defendants' same uncontested facts, on July 20, 2010, Sergeant Dunbar also conducted a frisk search of plaintiff without an untoward incident or an assault. Plaintiff did not seek medical attention after July 20, 2010; rather, prison officials had plaintiff examined on July 21, 2010. Plaintiff's medical records after July 20 do not indicate any injury and he had the evaluation at the request of prison administration and not

plaintiff's request (Docket No. 50, Pl. Memo. Ex. A; Docket No. 49, Ex. A, Ambulatory Health Record, July 8, 2010).

        4.        Psychological Pain

        Plaintiff also claims psychological pain from these incidents. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury" (emphasis added). Thus, plaintiff needed to first establish he suffered physical harm before he can litigate any mental or emotional injury claims arising from those physical injuries. The Prison Litigation Reform Act requires more than a showing of de minimis physical injury to allow an inmate to pursue an emotional or mental injury claim, Moore v. McGinnis, No. 01CV6588, 2004 U.S. Dist. LEXIS 29767, at *28 (W.D.N.Y. Dec. 20, 2004) (Siragusa, J.) (plaintiff alleged only de minimis physical injury, thus barred from asserting emotional claim under Prison Litigation Reform Act); see also Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003); Dolberry v. Levine, 567 F. Supp. 2d 413, 417-18 (W.D.N.Y. 2008) (Larimer, J.) (dismissing pro se inmate's emotional injury claim in absence of physical injury claim). In Dolberry, plaintiff alleged that he was denied showers and cleaning supplies for several weeks, alleging that he suffered a rash as a result. Judge Larimer held that plaintiff did not allege any physical injury and, under the Prison Litigation Reform Act, could not state a claim for emotional or mental injury absent a physical injury claim, 567 F. Supp. 2d at 417-18.

        As stated above, plaintiff here only asserts de minimis physical injuries from the July 7 and 20, 2010, incidents. These claimed injuries do not suffice to form plaintiff's emotional or

mental claims under the Prison Litigation Reform Act. Plaintiff's psychological pain cannot bolster his physical injuries beyond <u>de minimis</u> loss.

        5.      In Summary

From the record before this Court, and taking all inferences in favor of plaintiff as non-movant, even if plaintiff had force applied to him during the pat down searches on July 7, 15, and 20, 2010, plaintiff only suffered limited physical injuries that do not rise to a constitutional level. But plaintiff fails to prove that these use of force incidents occurred because he failed to proffer admissible evidence in opposition to defendants' contrary assertions. The alleged physical injuries also were not sufficiently severe to have this Court consider whatever mental or emotional harm he may have suffered under the Prison Litigation Reform Act. Defendants' motion for summary judgment (Docket No. 35) dismissing these claims is **granted**.

        C.      Supervisory Response

Plaintiff raises two types of supervisory claims. First, he asserts against Sergeants Dunbar and Warner that they failed to protect him from incidents they observed (Docket No. 50, Pl. Memo. at 14-15). Second, he concludes that Superintendent Conway and Deputy Superintendent Chappius failed to respond when placed on notice through plaintiff's grievance and correspondence (<u>id.</u> at 16-17).

As for the sergeants' affirmative duty to intervene, one element for this claim is the existence of a constitutional violation or excessive use of force, <u>O'Neill</u>, <u>supra</u>, 839 F.2d at 11; <u>Anderson v. Branen</u>, <u>supra</u>, 17 F.3d at 557. The Supreme Court in <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam), observed that "if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations

might have authorized the use of constitutionally excessive force is quite beside the point," see Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001). The Second Circuit then extended the Heller rationale for limiting liability where no constitutional violation occurred to officers failing to intervene when the alleged violation occurred, Curley, supra, 268 F.3d at 72. Alternatively, the court held that plaintiff there could not create a triable issue of fact to defeat defendants' summary judgment motion "by asserting in conclusory fashion" that defendant officers had a duty to intercede but failed to do so, id.

Here, plaintiff makes conclusory assertions that the sergeants had a duty to protect him on July 7 and 20, 2010. As found above, plaintiff has not stated that a constitutional violation occurred before these defendants to require their intervention.

On the superintendent and deputy superintendent's liability, plaintiff again only makes conclusory allegations that these defendants were personally aware of his relocation movements within Attica and the impact of plaintiff's moves from one cell block to another. Absent proof beyond plaintiff's own statements, this claim fails. Also, under Curley, 268 F.3d at 71 (applying Heller) supervisory defendants cannot be held liable for inadequate training or supervision when the officers involved in the incident do not violate plaintiff's constitutional rights. Absent a violation, plaintiff's allegations against Conway and Chappius also fails.

D.     Retaliation

As for plaintiff's retaliation claims, plaintiff declares generally that he has a First Amendment right to warn his fellow inmates when prison officials are coming, in order for other inmates to stop banned activities (Docket No. 50, Pl. Memo. at 17). Defendants argue that there was no objective evidence that defendants deprived plaintiff of food or recreation or harassed

him for warning the Hispanic inmate on July 7, 2010 (Docket No. 52, Defs. Atty. Reply Decl . ¶ 6). Defendants also argue that plaintiff did not have a constitutional right to warn another inmate, thus not establishing one element for a First Amendment retaliation claim that plaintiff's speech rights were violated (id.; Docket No. 37, Defs. Memo. at 9-10).

Given the prison context where inmate objections to official actions and "the ease with which claims of retaliation may be fabricated," inmate charges of retaliation are viewed by courts in this Circuit "with skepticism and particular care," Colon, supra, 58 F.3d at 872; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). An inmate's free speech rights may be restricted by the correctional institution if reasonably related to legitimate penological interest, Duamutef, supra, 98 F.3d at 24; see Turner v. Safley, 482 U.S. 78, 89 (1987). Prison officials have the right, in order to secure the facility, to restrict the ability of one inmate to communicate the movement of corrections officers to other inmates, to avoid one inmate warning others of the arrival of officers for a spot inspection, for example. In Phillips v. Lecuryer, No. 9:08CV878, 2013 U.S. Dist. LEXIS 36452 (N.D.N.Y. Feb. 19, 2013) (Baxter, Mag. J.), Magistrate Judge Baxter recently found that an inmate Ralph Buck Phillips' writing that violated prison regulations (attempting to smuggle mail out of the facility through another inmate and sending threatening letters) did not constitute protected activity, id. at *105-06, *97. Cases finding constitutionally protected activities include filing law suits and grievances, Collins v. Goord, 438 F. Supp. 2d 399, 419 (S.D.N.Y. 2006); Walker v. Schriro, No. 11 Civ. 9299, 2013 U.S. Dist. LEXIS 42551, at *20 (S.D.N.Y. Mar. 26, 2013).

Here, the claimed protected activity effectively has one inmate assisting other inmates in hiding illicit activity by warning them that corrections officers were coming. Therefore, the first

element for a retaliation claim--that plaintiff's speech was constitutionally protected, see Gill, supra, 389 F.3d at 380--does not exist; defendants' motion for summary judgment dismissing this claim is **granted**.

       E.       Qualified Immunity

Alternatively, defendants claim entitlement to qualified immunity. Given that this Court has first considered whether constitutional violations have occurred and found that no such violations happened, this Court need not engage in a qualified immunity analysis.

III.     Result of This Order

As a result, defendants' motion for summary judgment (Docket No. 35) is **granted**. The Court Clerk is to enter judgment and close this case.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Docket No. 35) is **granted**. The Court Clerk is to enter judgment and close this case. As previously stated, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor

person should be directed, on motion, to the United States Court of Appeals for the Second

Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

*/s/ Hugh B. Scott*

Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
     April 10, 2013